## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| STEVEN C. BRENNER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STEVEN GREENBERG, GARY WEBER, | ) |
| WESTFIELD, LLC, WISCONSIN LLC, | ) No. 08 C 826 |
| STEVE'S GAS LLC, GOLD CANYON LLC, | ) |
| GREENWEBSHERRY DEVELOPMENT LLC, | ) The Honorable William J. Hibbler |
| P. FLANAGAN LLC, GREEN WEB RIVER LLC, | ) |
| FREEMONT INVESTORS LLC, FREEMONT | ) |
| HOLDING LLC, GF REALTY PARTNERS, | ) |
| ALARON HOLDINGS, ALARON TRADING | ) |
| CORP., and GREENBERG FAMILY LIMITED | ) |
| PARTNERSHIP, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Steven Brenner alleges that in July 2007 he entered into an agreement ("the Settlement Agreement") with Defendants wherein he made a number of promises and released any claims he might raise against Defendants regarding a previous business relationship between the parties. In return, Defendants provided Brenner with various types of consideration, including two that are relevant here: (1) a promise not to make disparaging remarks regarding Brenner; and (2) a promise to pay Brenner a "finder's fee" of 5% of the sale price of certain properties if Defendants sold them to certain prospective buyers. Brenner alleges that Defendants breached the Settlement Agreement and, additionally, that Defendant committed slander. Brenner filed this resulting lawsuit in this Court based on the parties' diversity of citizenship. 28 U.S.C. § 1332. Defendants now move the Court to dismiss Brenner's Third Amended Complaint and, alternatively, to strike certain allegations from that complaint. For the reasons set forth below,

1

the Court grants the motion to dismiss in part and denies it in part, denies the motion to strike, and grants Brenner leave to file a Fourth Amended Complaint to cure some remaining deficiencies.

## BACKGROUND

This case arises from a business relationship gone sour. In his complaint, which must be accepted by the Court as true at this procedural stage, Brenner lays out a narrative that begins with a mutually profitable arrangement between Brenner and Defendant Greenberg. Greenberg hired Brenner to oversee the development of various parcels of land owned by Greenberg in Arizona, and later in Wisconsin and Illinois as well. However, despite Brenner's apparent success in providing these services, Greenberg decided to end his business relationship with Brenner, opting to work with Defendant Weber instead. Greenberg told Brenner he was cancelling the development of the Arizona properties. Brenner complained about what he felt was a breach of his agreement with Greenberg and, in order to resolve these complaints, all of the parties entered into the aforementioned Settlement Agreement.

On July 1, 2007, around the time that the parties were engaging in negotiations regarding the Settlement Agreement, Brenner received a job offer from GBMA Architecture LLC. Brenner had developed a relationship with GBMA during his work on the development of Greenberg's Arizona properties and GBMA's principal member, Manuel Aguirre, was impressed with Brenner's performance. Brenner accepted the offer.

In early August Aguirre presented Defendants with an invoice for the work GBMA provided for the development of the Arizona properties. Weber engaged Aguirre in negotiations surrounding the payment of this invoice. During the course of these negotiations, Weber exclaimed to Aguirre, "Brenner is the one who caused the project to implode! Brenner *purposely*

misled me and my partner, just to butter his own bread!" Shortly thereafter, Aguirre informed Brenner that his employment with GBMA was on hold indefinitely. This incident forms the basis for the first two counts of Brenner's complaint. Brenner alleges that Weber's statement to Aguirre constituted slander as well as a breach of Defendants' promise in the Settlement Agreement not to make disparaging remarks about Brenner.

Brenner's second claim that Defendants breached the Settlement Agreement is based on events which took place in December 2007 and January 2008. On December 5, 2007, Andy Bhanvadia, one of the prospective buyers that Brenner had interested in the Arizona properties, contacted GBMA to express his interest in buying one of those properties. GBMA forwarded his message to Greenberg's assistant. However, Bhanvadia never heard back from Greenberg despite persisting in his attempts for several weeks. On or about January 10, 2008, Bhanvadia bought a nearby property from a different seller which was priced in the same range as Greenberg's property. In Count III of his Third Amended Complaint, Brenner claims that by refusing to sell to Bhanvadia, and thus denying Brenner his right to a 5% finder's fee, Greenberg violated the covenant of good faith he made by entering into the Settlement Agreement.

## DISCUSSION

### I. Motion to Dismiss

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a motion to dismiss under federal notice pleading, a plaintiff must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S.

3

89, ----, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Disability Rights Wisc., Inc. v. Walworth County Bd. Of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

## A. Slander

Defendants move to strike Brenner's slander claim on the grounds that it fails to allege any actionable utterance by Defendants. Defendants point to a test adopted by the Illinois Supreme Court in *Mittelman v. Witous*, 135 Ill. 2d 220, 242-44, 552 N.E.2d 973, 984 (1989), to help determine whether a statement is merely opinion, and thus subject to constitutional protection, or whether it contains factual assertions which may constitute actionable defamation. *See also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 94 S. Ct. 2997, 3007, 41 L. Ed. 2d 789, 805 (1974) ("Under the First Amendment there is no such thing as a false idea"). In applying the test, the Court examines four factors: "(1) whether the statement has a precise core of meaning for which a consensus of understanding exists, or conversely, whether the statement is indefinite and ambiguous; (2) whether the statement is verifiable, *i.e.*, capable of being objectively characterized as true or false; (3) whether the literary context of the statement would influence the average reader's readiness to infer that a particular statement has factual content; and (4) whether the broader social context or setting in which the statement appears signals a usage as either fact or opinion." *Mittelman*, 552 N.E.2d at 984.

The test adopted in *Mittelman* is not the only test which Illinois courts use as guidance for the difficult inquiry into where a statement lies on the fact/opinion dichotomy. *Mittelman*, 552 N.E.2d at 984. Courts use the test "to supplement, rather than replace, the analytical framework of the Restatement" and have also relied on legal dictionary definitions of "fact" and "opinion evidence." *Id.* As with the *Mittelman* test, the Restatement framework recognizes that even

4

statements of opinion can contain factual content and thus draws a distinction between statements of "pure opinion" and statements of "mixed opinion." A statement of pure opinion is one where the speaker states an opinion in one of two situations: (1) when the speaker also states the factual basis for the opinion; or (2) when the speaker and the listener both know the facts underlying the opinion, or assume their existence, thus rendering a statement of the facts unnecessary. *Mittelman*, 552 N.E.2d at 983 (citing Restatement (Second) of Torts § 566 cmt. b (1977)). In such a situation, the speaker may be liable for any false statement of facts, but not for the statements of opinion made on the basis of those facts. *Id.* at 984 (citing Restatement (Second) of Torts § 566 cmt. c(1) (1977)). A statement of mixed opinion is one where the speaker states an opinion in the absence of the two conditions identified above, thus potentially implying that there are undisclosed facts that justify the opinion expressed. *Id.* at 983 (citing Restatement (Second) of Torts § 566 cmt. b (1977)). A statement of mixed opinion can form the basis for liability. *Id.*

Defendants point to three cases to support their position that a proper application of the test adopted in *Mittelman* to the instant case requires dismissal. In all three of those cases, the court held that the statements at issue were not actionable because they were not made in a specific factual context. First, in *Schivarelli v. CBS, Inc.*, 333 Ill. App. 3d 755, 762, 776 N.E.2d 693, 699 (Ill. App. Ct. 2002), the court held that a statement by an investigative reporter that "the evidence seem[ed] to indicate" that the plaintiff was "cheating the city" was not actionable because it was presented out of context in a 30-second promotional segment which was otherwise unrelated to the plaintiff. Second, in *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 329-30, 708 N.E.2d 441, 451 (Ill. App. Ct. 1999), the court held that a statement that the plaintiff was a "crook" was not actionable because there was no

evidence that the audience had any knowledge of the factual context in which the statement was made, thus making it a general statement devoid of factual content. Third, in *Doherty v. Kahn*, 289 Ill. App. 3d 544, 554-57, 682 N.E.2d 163, 170-73 (Ill. App. Ct. 1997), the court held that statements made by the plaintiff's former employer that the plaintiff was "dishonest," incompetent," and "lazy" were not actionable because they were not expressions of mixed opinion with specific facts at the roots of the statements.

In the case at bar, Defendants are right to point out that there is little factual content in the statement by Weber quoted in Brenner's complaint. Thus, the Court's focus in this case is on the issue of context. The cases referenced by Defendants reaffirm the complexity of the inquiry into whether a statement is opinion or fact, and how the context in which a statement is made affects this inquiry. All three of these cases hold that that there is so little factual context provided for the comments that they cannot be factual statements. However, as the discussion of the Restatement analysis above indicates, the fact that a statement lacks sufficient factual context can actually imply the existence of facts, and thus provide the basis for liability. *Mittelman*, 552 N.E.2d at 983 (citing Restatement (Second) of Torts § 566 cmt. b (1977)).

It is for precisely this reason that while the cases cited by Defendants bear some resemblance to the instant case, they are not directly on point. Here, unlike in those cases, the statements allegedly made by Weber were not made entirely out of context. Both Weber and Aguirre apparently had a general understanding of Brenner's role in the development of the Arizona properties, and the fact that the project had been cancelled despite the fact that Aguirre and Brenner had been engaged in some arrangements for developing the properties. Thus, Weber did not merely label Brenner an incompetent, misleading, or greedy employee in a conversation with someone who was not apprised of the context – statements which would be

more analogous to the cases above. Instead, he accused Brenner of "caus[ing] the project to implode" and "*purposely* mislead[ing Weber and Greenberg] just to butter his own bread" in the context of a conversation about the specific reasons for the cancellation of a specific project with which Aguirre was somewhat familiar.

However, while the statement was embedded in sufficient context to distinguish this case from *Schivarelli*, *Dubinsky*, and *Doherty*, Weber did not provide a sufficient statement of the facts to qualify the statement as one of pure opinion. If he had, the Court could separate the statements of facts from the opinion and judge them on their own merit. Instead, Weber made a statement of mixed opinion, implying that there was some underlying set of facts upon which he based his opinion that plaintiff "caused the project to implode" and "misled [Weber and Greenberg] just to butter his own bread." Weber left Aguirre in a position where he knew just enough to potentially assume the existence of certain facts. For that reason, the statement is actionable, and the Court denies the Defendants' motion to dismiss as to Count I of the Third Amended Complaint.

## B. Breach of Contract

### 1. Full Performance by Plaintiff

Defendants also move to dismiss Brenner's breach of contract claims for failure to state a claim, arguing that Brenner failed to meet his burden of pleading full performance of his obligations under the contract. Defendants essentially argue that Brenner pleaded himself out of court, pointing to the fact that in his original complaint, Brenner included claims that he had released under the Settlement Agreement (and that he has since relinquished). Defendants' argument fails because Brenner alleges that Defendant committed the first uncured material breach of the Settlement Agreement.

7

Defendants are correct that in order to state a claim for breach of contract, one of the elements a plaintiff must allege is that it has performed its obligations under the contract. *See, e.g., Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 600 (Ill. App. Ct. 2005). However, the Court does not see the justice in holding that a defendant is forever relieved of liability under a contract simply because a plaintiff committed a breach, which it later cured, after the defendant's original breach. For this reason, despite the fact that it is not often phrased this way, courts actually require plaintiffs to plead only that they have performed all conditions precedent under a contract. *See Norman v. Sch. Dist. No. 1, Pope County*, 8 Ill. App. 2d 466, 471, 131 N.E.2d 811, 814 (Ill. App. Ct. 1956) (explaining that this was the rule at common law, and that it has now been codified and requires only general allegations by plaintiff); *see also* Ill. Sup. Ct. R. 133(c) (modern codification of the rule discussed in *Norman*); *Thilman & Co. v. Esposito*, 87 Ill. App. 3d 289, 296, 408 N.E.2d 1014, 1020 (Ill. App. Ct. 1980) (citing Rule 133(c) as the source of the element recited by Defendants here). It is a well-established principle of contract law that the party who commits the first uncured material failure of performance is liable for such failure. Restatement (Second) of Contracts §§ 237 & 237, cmt. b (1981). Here, not only has Brenner alleged that Defendants' breach occurred well before he filed his lawsuit, but through his amendment of his original complaint he seems to have cured whatever breach he committed by filing released claims. For these two reasons, the Court denies Defendants' motion to dismiss Brenner's breach of contract claims on the grounds that Brenner pleaded himself out of court with the filing of his original complaint.

Nonetheless, Brenner should have included a general allegation that he performed all of his duties under the contract prior to Defendant's breach. Ill. Sup. Ct. R. 133(c). The Court

grants Plaintiff leave to file a Fourth Amended Complaint so that he may cure this defect, as well as for an additional reason stated below.

## 2. Covenant of Good Faith

Defendants also argue that Count III of Brenner's Third Amended Complaint should be dismissed for failure to state a claim because Illinois law does not recognize an independent cause of action for breach of an implied covenant of good faith. As discussed above, Brenner alleges that Greenberg avoided contact with Bhanvadia, who was willing to make a legitimate offer to buy property from Defendants, in order to avoid paying Brenner his 5% finder's fee for any sale to Bhanvadia. Count III asserts that the clause in the Settlement Agreement providing for the finder's fee "necessarily incorporated a duty of good faith on Greenberg's part" that required Greenberg to generally respond to Bhanvadia "in a manner intended to facilitate or encourage prospective or possible purchases" of the Arizona properties. (3d Amend. Compl. ¶ 98.) In setting forth Count III, Brenner relies only on allegations that Greenberg violated this duty of good faith. The parties agree that Illinois courts do recognize an implied covenant of good faith and fair dealing in every contract unless it is expressly disavowed. *Dayan v. McDonald's Corp.*, 125 Ill. App. 3d 972, 989-90, 466 N.E.2d 958, 971 (Ill. App. Ct. 1984) (citing *Martindell v. Lake Shore Nat'l Bank*, 15 Ill.2d 272, 286, 154 N.E.2d 683, 690 (1958)). Thus, the only question before the Court is whether, under Illinois law, such a covenant provides the basis for a cause of action for breach of contract. The Court holds that, at the very least, such a cause of action does not exist under these circumstances.

The Illinois Supreme Court has stated that the covenant of good faith "is used only as a construction aid in determining the intent of the contracting parties." *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513, 523, 675 N.E.2d 897, 903 (1996) (citing *Martindell*, 154 N.E.2d at 690 ("where an instrument is susceptible of two conflicting constructions, one which imputes bad

9

faith to one of the parties and the other does not, the latter construction should be adopted")). The *Cramer* court noted that some courts had recognized a similar cause of action based on a duty by insurers to settle cases brought by third parties against insureds. 675 N.E.2d at 903. In those cases, the "'duty to settle' arises because the policyholder has relinquished defense of the suit to the insurer...[and] depends on the insurer to conduct the defense properly." *Id.*

In *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 298, 751 N.E.2d 1126, 1132 (2001), the Illinois Supreme Court declined to expand the exception noted in *Cramer* beyond the "duty to settle" cases. The *Voyles* court also pointed out that Illinois courts have "consistently refused to recognize an independent tort for breach of the implied duty of good faith and fair dealing in a contract." 751 N.E.2d at 1130 (compiling cases). Even if this Court were to accept the possibility that the *Voyles* decision leaves room for the expansion of the "duty to settle" exception to analogous cases, the Court does not find this case to be analogous to that narrow exception. Unlike an insured in a "duty to settle" case, Brenner did not relinquish his right to make decisions regarding the sale of property. Greenberg always had ultimate authority regarding the sale of the property, and Brenner's finder's fee was always subject to Greenberg's authority to decide not to sell property to a prospective buyer. Thus, the Court grants Defendants' motion to dismiss as to Count III of Brenner's Third Amended Complaint.

## II. Motion to Strike Allegations

Finally, Defendants argue that if Brenner is allowed to proceed with his case, a good deal of his complaint should be stricken pursuant to Federal Rule of Civil Procedure 12(f) as immaterial and impertinent to Brenner's claims. Rule 12(f) provides for the striking of "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f).

Brenner argues that the purportedly irrelevant paragraphs provide context regarding Defendants' motive and bad faith, as well as Brenner's difficult circumstances. Brenner also argues that the Court should not strike pleadings absent a showing of actual prejudice, citing *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 820-21 (7th Cir. 2001). *Davis* does not stand for the proposition that such a showing is necessary in order to prevail on a Rule 12(f) motion – in fact, the court in that case noted that the defendant would likely have been entitled to a Rule 12(f) order if it had filed such a motion. *Id.* The *Davis* court did advise the defendant not to file such a motion, however, noting that because the material at issue was not actually prejudicial a Rule 12(f) motion might constitute harassment and would be the type of motion that gives motion practice a "deservedly bad name." *Id.*

Defendants objects to 38 of the 101 paragraphs in the complaint. The Court finds merit to some of Defendants' objections, as some of this material is not relevant to Brenner's claims. Indeed, the Court is generally disappointed in the excessive nature of Brenner's allegations, which include 110 paragraphs stretched over 30 pages. Defendants should not bear the burden of answering all of these allegations if they are not relevant. On the other hand, some of the allegations Defendants object to actually do provide some context for the Settlement Agreement, especially some of the background information contained in paragraphs 10 through 39. The Court will not assume the responsibility for going through these paragraphs individually in order to identify which allegations must be stricken. For this reason, the Court denies the motion to strike and grants Brenner leave to file a Fourth Amended Complaint. The Court will not allow any additional amendments. Brenner's Fourth Amended Complaint shall not exceed 70 paragraphs.

## *CONCLUSION*

For the above reasons, Defendants' motion to dismiss is denied as to Counts I and II and granted as to Count III. Defendants' motion to strike is denied. Plaintiff is given leave to file a Fourth Amended Complaint according to the conditions set forth above.

IT IS SO ORDERED.

6/18/09
Dated

Hon. William J. Hibbler
United States District Court