UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN C. BRENNER, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 08 C 826 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| STEVEN GREENBERG and GARY WEBER, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

What remains of this lawsuit are Plaintiff Steven Brenner's claims against Defendants Steven Greenberg and Gary Weber for defamation and breach of a July 2007 settlement agreement intended to resolve an earlier dispute, and Greenberg's and Weber's counterclaim for breach of the same agreement. Before the court are three motions: (1) Weber's and Greenberg's joint motion for summary judgment on Brenner's claims; (2) Greenberg's separate motion for summary judgment on Brenner's claims; and (3) Weber's and Greenberg's joint motion for partial summary judgment on their counterclaim. The first motion is granted, the second is denied as moot, and the third is denied.

**Background**

Unless noted otherwise, the following facts are undisputed. On August 15, 2005, Brenner and Greenberg entered into an agreement regarding the development of 4.5 acres of land in Gold Canyon, Arizona. Greenberg owned the land, and Brenner was to help develop it into four parcels. One parcel was earmarked for a gas station and convenience store. The other three parcels were intended for development as "pads"—meaning land with the infrastructure, such as

-1-

sewer services, power, and water services, necessary for further development—that ultimately would be sold to others. A handwritten document entitled "Brenner deal" provided that Brenner would receive monthly compensation, the potential for employment at and an equity interest in the gas station upon it completion, and other consideration.

At some point in 2006, Brenner retained architect Manuel Aguirre, the principal of GBMA Architecture LLC, to work on the project. Brenner's goal was to have the gas station built and operating by the end of 2007. At some point in early 2007, Greenberg brought Weber into the project on terms—reflected in two "term sheets" sent to Brenner—that Brenner felt unfairly diluted his interest in the enterprise. On May 2, 2007, Brenner sent an email to Greenberg, copying Weber, to express his view that Greenberg had reneged on the original deal. Weber responded by email on May 7, 2007, stating that the terms of the original deal were "non-binding" and telling Brenner to stop attempting to directly contact Greenberg.

The parties then parted ways and, on July 13, 2007, entered into a Settlement Agreement and General Release ("Agreement"). Paragraph 1 provides that, upon Brenner's certification that he had complied with Paragraph 4, Weber and Greenberg would make "Settlement Payments" to Brenner consisting of a $331,200 check, cancellation of $32,300 in debts owed by Brenner, and finder's fees upon the occurrence of certain property sales.

In Paragraph 4, Brenner acknowledged that "one of [Greenberg's and Weber's] primary reasons for entering into this Agreement is to obtain complete confidentiality regarding their businesses and business affairs"; agreed not to disclose any information regarding his involvement with Greenberg and Weber, their business activities, or the Settlement Agreement; and further agreed "to return to Greenberg any and all communications (and all copies thereof) with Greenberg or [Weber], including specifically, without limitation, … all documents (and all

copies thereof) concerning this matter or concerning any matters pertaining to [Greenberg and Weber]," and to "forward to Greenberg all of such e-mail transmissions and documents, and then permanently delete all e-mail transmissions and attachments of any type sent to or received from [Greenberg and Weber]." Paragraph 4 provides that the "prompt return of such communications and documents and the forwarding of such e-mail transmissions, with a certification that all such communications have been returned and all e-mail transmissions have been permanently deleted, is a condition precedent to the making of the Settlement Payments."

Paragraph 2 sets forth Brenner's agreement to release Greenberg and Weber "from any and all claims … based directly or indirectly upon [his] affiliation with [Greenberg and Weber], or any of them," and provides that Brenner "promises and covenants that he … will not file any lawsuit or institute any type of proceeding against [Greenberg and Weber] … based upon any claim covered under the foregoing release." Paragraph 6 provides that the parties would refrain from making "any disparaging remarks" about the others, and that Greenberg and Weber "shall not discuss or disclose **any information whatsoever to anyone** concerning [Brenner's] business activities" (bold in original). Paragraph 7 states that should Brenner violate Paragraphs 4, 5, or 6, he would forfeit fifty percent of $331,200 payment made by Greenberg and Weber and the cancelled debt would be reinstated.

Following execution of the Settlement Agreement, Brenner signed a notarized certification ("Paragraph 4 Certification") stating: "I, Steven C. Brenner, being duly sworn, state under oath that I have fully complied with the provisions of Paragraph 4 of the Settlement Agreement and General Release by returning all of the requested materials and by permanently deleting all e-mail transmissions and attachments of any type sent to or received from any of the respondents." Greenberg and Weber then tendered $331,200 to Brenner and cancelled his debts.

After Brenner told Aguirre that he was no longer involved with the Gold Canyon project, in need of work, and in dire financial straits, Aguirre offered and Brenner accepted a job with GBMA as an administrator-manager on numerous projects in California and the Midwest. In early August 2007, before Brenner reported for work with GBMA, Weber spoke with Aguirre by telephone and, referencing Brenner's departure from the Gold Canyon project, said that "the project was not where it should have been, that we should have been doing the three pads first, that Steve Brenner had been buttering his own bread[,] and that [Weber] and Greenberg felt misled." Aguirre understood Weber to be stating his opinion that Brenner "had been looking out for his interests and not the interests of the project." Days later, Aguirre withdrew the offer of employment to Brenner, and testified that his conversation with Weber was the "tipping point" in his decision. About a week later, Weber's counsel asked Aguirre to sign a prepared statement denying that Weber had disparaged Brenner, but Aguirre refused.

Brenner filed this action in February 2008. Brenner's initial complaint asserted a defamation claim based on Weber's statement to Aguirre; a claim that Weber's statement breached the non-disparagement provision of Paragraph 6 of the Agreement; and a claim seeking a declaration voiding the Agreement and reinstating the terms of Brenner's original deal with Greenberg. The complaint attached as exhibits: (1) the "Brenner deal" document setting forth Brenner's original arrangement with Greenberg; (2-3) the two subsequent "term sheets" that Brenner believed unfairly diluted his interest in the project; (4) Brenner's May 2, 2007 email to Greenberg; and (5) Weber's May 7, 2007 email response to Brenner. Brenner asserts that he retained those five documents "pursuant to legal advice that he should withhold certain documents for informational purposes in the event of an IRS inquiry." Doc. 116, at 14, ¶ 36.

With respect to his May 2, 2007 email to Greenberg, Brenner testified that he kept it "from more of a litigation point showing what was our [original] agreement and how it changed."

After reviewing the complaint, counsel for Greenberg and Weber served Brenner's counsel with a Rule 11 notice demanding that Brenner withdraw the declaratory judgment claim on the ground that it was prohibited by the Agreement's release and covenant-not-to-sue provisions. Brenner filed an amended complaint deleting that claim, and ultimately filed a fourth amended complaint. Weber and Greenberg answered and counterclaimed, alleging that Brenner breached the covenant-not-to-sue clause in Paragraph 2 of the Agreement, the document return/email destruction clause in Paragraph 4, and the non-disparagement clause in Paragraph 6.

## Discussion

Weber and Greenberg seek summary judgment on Brenner's two claims, and also on their counterclaim. Both sides' attention to Local Rule 56.1 ("LR 56.1") was less than perfect. The court will overlook the parties' noncompliance in all respects save one: if an assertion of fact in a brief or LR 56.1 statement is not supported by citation to competent evidentiary material, the assertion will be rejected; the court need not and will not scour the record to find evidentiary support for factual assertions the parties have not supported on their own. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) ("The district court cannot be expected to search through the entire record for evidence that may support a party's contentions; a party must point to specific evidence that creates a genuine issue of material fact for trial."); *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact.

We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

> **I.   Greenberg and Weber Are Entitled to Summary Judgment on Brenner's Claims.**
>
> **A.   Brenner's Defamation Claim**

The parties agree that Illinois law governs Brenner's defamation claim. To prevail, Brenner bears the burden of showing that: (1) that Weber and/or Greenberg made a false statement about him; (2) Weber and/or Greenberg made an unprivileged publication of that statement to a third party; and (3) the publication caused him to suffer injury. *See Krasinski v. United Parcel Serv., Inc.*, 530 N.E.2d 468, 471 (Ill. 1988). Brenner's defamation claim founders as a matter of law on the first element.

Before examining whether there is a genuine issue of fact regarding falsity, it first is necessary to determine the content of the alleged defamatory statement. In his opposition brief and LR 56.1 statement, Brenner contends that Weber told Aguirre: "Brenner is the one who caused the project to implode! Brenner purposely misled me and my partner, just to butter his own bread!" Doc. 116 at 20, ¶ 17; Doc. 117 at 3, ¶ 2(H). Brenner cites two documents to support this assertion. The first document, the fourth amended complaint, is not evidence. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)). The second document, Aguirre's deposition transcript, flatly contradicts Brenner's rendition of Weber's statement. As Greenberg and Weber correctly note, Aguirre testified that Weber told him that "the project was

not where it should have been, that we should have been doing the three pads first, that Brenner had been buttering his own bread[,] and that [Weber] and Greenberg felt misled." There is no contrary evidence; indeed, Brenner's response to Greenberg's and Weber's LR 56.1 statement "admits" Greenberg's and Weber's rendition of what Weber told Aguirre. *See* Doc. 116 at 15, ¶ 40. Accordingly, there is no genuine dispute regarding the content of Weber's statement.

Having established what Weber actually said, the question becomes whether Brenner has adduced evidence demonstrating a material issue over whether the statement (assuming it was not mere opinion, and thus beyond defamation liability) was false. Brenner's summary judgment filings repeatedly assert that the statement is "false," "malicious," and "slanderous." Many of Brenner's assertions are made without citation to the record; those assertions are without value, for "argument of counsel is not evidence, and cannot provide a proper basis to deny summary judgment." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009); *see also Marion v. City of Corydon*, 559 F.3d 700, 704 (7th Cir. 2009); *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 593 n.4 (9th Cir.2002). The only assertions accompanied by record citations refer to Aguirre's deposition testimony and the fourth amended complaint. *See* Doc. 116 at 3; Doc. 117 at 3; Doc. 127 at 5, 6. But Aguirre did not state, let alone establish, that Weber's statement was false and, as just noted, the fourth amended complaint is not evidence. Accordingly, Brenner has failed to demonstrate a material issue on an essential element of his defamation claim. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998).

Brenner might have avoided summary judgment by submitting an affidavit, or pointing to specific deposition testimony (if there is any), averring that he was not, in fact, putting his own interests ahead of the interests of the Gold Canyon project—the thrust of Weber's statement.

Brenner certainly has knowledge regarding his own approach to the project. Yet he inexplicably failed to tap arguably the best available source (himself) for evidence that Weber's statement was false. Absent evidence supporting the falsity element of Brenner's defamation claim, Greenberg and Weber are entitled to summary judgment on that claim. *See Atuahene v. City of Hartford*, 491 F. Supp. 2d 278, 284-85 (D. Conn. 2007); *Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1578 (M.D. Fla. 1996); *Scherer v. Rockwell Int'l Corp.*, 766 F. Supp. 593, 607 (N.D. Ill. 1991); *Parkey v. Bowling*, 2009 WL 3720692, at *7 (N.D. Ind. Nov. 4, 2009); *Campos v. Lemay*, 2007 WL 1344344, at *5 (S.D.N.Y. May 7, 2007).

Given this disposition, it is not necessary to address Greenberg's and Weber's alternative grounds for summary judgment—that Weber's statement was pure opinion, that the statement was privileged, or that Brenner's reputation was so poor to begin with, *see Brenner v. CFTC*, 338 F.3d 713 (7th Cir. 2003) (affirming lifetime trading ban and $300,000 civil penalty on Brenner); *People v. Brenner*, 482 N.E.2d 396 (Ill. App. 1985) (affirming Brenner's conviction for deceptive practices and theft by deception); Doc. 93 at 3, ¶¶ 7-8 (noting Brenner's subsequent convictions for deceptive practices and assault); *id*. at 4, ¶¶ 10-11 (noting earlier CFTC sanctions on Brenner and federal court injunction banning Brenner from trading); *Wagner v. Brenner*, 1986 WL 66115 (CFTC Dec. 19, 1986) (finding that Brenner failed to satisfy a reparations award), that he was essentially defamation-proof.

### B. Brenner's Contract Claim

Although the Agreement does not have a choice-of-law provision, the parties agree that Illinois law governs, so that is the law the court will apply. *See McFarland v. Gen. Am. Life Ins. Co.*, 149 F.3d 583, 586 (7th Cir. 1998). To recover for breach of contract, a plaintiff must establish "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff;

(3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Zirp-Burnham, LLC v. E. Terrell Assocs., Inc.*, 826 N.E.2d 430, 439 (Ill. App. 2005) (internal quotations omitted). Regarding the second element, a plaintiff's failure to perform precludes a contract claim if the plaintiff's breach was material. *See George F. Mueller & Sons, Inc. v. N. Ill. Gas Co.*, 336 N.E.2d 185, 189 (Ill. App. 1975) ("The party who insists upon performance by the other party must show performance on his part, while he who desires to rescind the contract need only show nonperformance or inability to perform by the other."); *Israel v. Nat'l Canada Corp.*, 658 N.E.2d 1184, 1190 (Ill. App. 1995). "Whether breach of contract is material … is a question to be decided on the inherent injustice of the matter." *Ibid.*; *see also Hanson v. Duffy*, 435 N.E.2d 1373, 1378 (Ill. App. 1982); Restatement (Second) of Contracts § 241.

Greenberg and Weber contend that Brenner's contract claim fails as a matter of law because the undisputed facts show that Brenner materially breached the Agreement. They are correct as to Paragraph 4, which required Brenner "to return to Greenberg any and all communications (and all copies thereof) with Greenberg or [Weber], including specifically, without limitation, … all documents (and all copies thereof) concerning this matter or concerning any matters pertaining to [Greenberg and Weber]," to "forward to Greenberg all such e-mail transmissions and documents, and then permanently delete all e-mail transmissions and attachments of any type sent to or received from [Greenberg and Weber]," and to sign under oath the Paragraph 4 Certification. Brenner plainly violated Paragraph 4 by retaining five documents he was required to return or destroy—the handwritten "Brenner deal" document setting forth the original terms of his engagement on the Gold Canyon project, the two term sheets reflecting the revised deal that Brenner felt unfairly diluted his interest, and the two emails Brenner exchanged

with Greenberg and Weber prior to Brenner leaving the project—documents he later attached as exhibits to his original and amended complaints.

While Brenner asserts that he "has in fact complied with" Paragraph 4 (Doc. 118 at 5), he points to nothing in the text of Paragraph 4 that placed the five documents beyond the scope of provision or that otherwise permitted him to keep copies. Brenner's failure in this regard constitutes a forfeiture of any contention that he actually complied with Paragraph 4. *See Quality Croutons, Inc. v. George Weston Bakeries, Inc.*, 2008 WL 373181, at *6 (N.D. Ill. Feb. 12, 2008). Indeed, Brenner inadvertently concedes his noncompliance by arguing in his brief that the Paragraph 4 Certification merely swore that "he had done his best to comply with par. 4." Doc. 118 at 4. If Brenner believed that he had complied with the letter of Paragraph 4, he would not have felt compelled to assert that he had "done his best" to comply. In any event, Brenner inaccurately describes the Paragraph 4 Certification, which plainly says that Brenner "*fully complied* with the provisions of Paragraph 4 … by returning *all* of the requested materials and by permanently deleting *all* e-mail transmissions and attachments of *any* type sent to or received from [Greenberg and Weber]" (emphasis added), not that he did his best.

Brenner's more substantial, though equally unsuccessful, argument is that he had "good cause" for noncompliance because, three days prior to his signing the Agreement, his then-counsel advised him to keep the five documents "for informational purposes in the event of an IRS inquiry." Doc. 116, at 14, ¶ 36. Brenner's legal theory—briefly alluded to in the two cases he cites, *Melchior v. Illinois*, 22 Ill. Ct. Cl. 160, 1953 WL 4845, *5 (1953), and *Horton v. Allstate Ins. Co.*, 467 N.E.2d 284, 285 (Ill. App. 1984)—appears to be that tax or other legal obligations required him to keep the documents, thus rendering his performance of Paragraph 4 impossible or impracticable. While Illinois law recognizes an impossibility defense, *see*

*Felbinger & Co. v. Traiforos*, 394 N.E.2d 1283, 1289 (Ill. App. 1979), the defense fails here for at least two reasons.

First, a party asserting impossibility or impracticability has the burden of demonstrating that the circumstances rendered performance impossible or impracticable. *See YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 933 N.E.2d 860, 863 (Ill. App. 2010). Brenner has presented no such evidence, other than the hearsay statement of his then-counsel that tax law required him to keep documents that Paragraph 4 required him to return or destroy. Given that Paragraph 1 entitled Brenner to a Form 1099 for payments received under the Agreement, and that there is no indication that Brenner did not receive 1099s or other appropriate documentation for his prior earnings on the Gold Canyon project, it is difficult to see why Brenner needed the five documents for tax purposes. And Brenner admitted that he kept one of the emails "from more of a litigation point showing what was our [original] agreement and how it changed," a rationale at odds with his invocation of tax law as a justification for noncompliance.

Second, a party aware at the time of contracting of the condition rendering performance impracticable or impossible cannot later raise impracticability or impossibility to excuse noncompliance. *See* Restatement (Second) of Contracts § 266 ("Where, at the time the contract is made, a party's performance under it is impracticable without his fault because of a fact *of which he has no reason to know* and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.") (emphasis added); *see also id*., cmt. a ("under the rules stated in this Section, the affected party must have had no reason to know *at the time the contract was made* of the facts on which he later relies") (emphasis added); *Felbinger*, 394 N.E.2d at 1289-90 (defendant's knowledge of condition creating potential impossibility

precludes impossibility defense). In this case, accepting for the moment that tax law excused his nonperformance, Brenner was clearly aware of those obligations at the time of contracting, as he sought his then-counsel's advice three days *before* signing the Agreement. This defeats his invocation of the impossibility or impracticality defense.

Because Brenner indisputably breached Paragraph 4, the question becomes whether the breach was material as a matter of law, for only then can it be said that Brenner committed a material breach warranting dismissal of his contract claim at the summary judgment stage. Under Illinois law, the materiality inquiry asks "whether 'the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it.'" *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 715 (7th Cir. 1993) (quoting *Haisma v. Edgar*, 578 N.E.2d 163, 168 (Ill. App. 1991)).

The materiality of Paragraph 4 is clear on its face. In its first sentence, Brenner "acknowledge[d] that one of [Greenberg's and Weber's] primary reasons for entering into this Agreement [was] to obtain complete confidentiality regarding their businesses and business affairs." Paragraph 4 later identified Brenner's "prompt return of" the documents, "with a certification that all such communications have been returned and all e-mail transmissions have been permanently deleted," as "a condition precedent to the making of the Settlement Payments" by Greenberg and Weber.[1] Although "[t]he materiality of a contract breach is a question of fact

---

[1] Although the Agreement refers to Brenner's compliance with Paragraph 4 as a "condition precedent," it actually was a promise of performance. The distinction is not semantic, as the failure of a condition precedent invalidates a contract, while the failure to satisfy a promise gives rise to action for breach. *See McAnelly v. Graves*, 467 N.E.2d 377, 379 (Ill. App. 1984) ("a condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform"); *360networks Tenn., LLC v. Ill. Cent. R.R. Co.*, 2010 WL 2167394, at *3 (N.D. Ill. May 28, 2010) ("As a general rule, a condition must be exactly fulfilled before liability can arise on the contract ... . Nonfulfillment of a promise, however, gives rise to a different remedy: The non-fulfillment of a promise is

reserved for the jury," *Canada Dry Corp. v. Nehi Beverage Co., Inc.*, 723 F.2d 512, 517 (7th Cir. 1983), no reasonable factfinder could conclude that Paragraph 4 was not material. *See* Restatement (Second) of Contracts § 241(a) (in assessing materiality, court should look to "the extent to which the injured party will be deprived of the benefit which he reasonably expected").

In sum, Brenner indisputably breached Paragraph 4 and the breach indisputably was material. It follows that Brenner's contract claim fails as a matter of law, and that Greenberg and Brenner are entitled to summary judgment on the claim.

## II. Greenberg and Weber Are Not Entitled to Summary Judgment on Their Counterclaim.

Greenberg and Weber also seek summary judgment on the portions of their counterclaim alleging that Brenner breached Paragraphs 2 and 4 of the Agreement. As shown above, Brenner indisputably violated Paragraph 4, a violation that bars Brenner's contract claim under the material breach doctrine. But the doctrine works both ways, so to obtain summary judgment on their counterclaim, Greenberg and Weber must show that it is undisputed either that they performed under the Agreement or that any breach on their part was not material. They have failed to meet their burden with respect to their obligations under Paragraph 6.

---

called a breach of contract, and *creates in the other party a secondary right to damages*; it is the failure to perform that which was required by a legal duty.") (internal quotation marks and citations omitted). The parties plainly did not intend for noncompliance with Paragraph 4 to invalidate the entire Agreement, as evidenced by the liquidated damages clause in Paragraph 7, which provides for return of only *part* of the Settlement Payments if Brenner violated Paragraph 4. Were Paragraph 4 actually a condition precedent, Greenberg and Weber would have been entitled to return the *entire* Settlement Payments, and also would have been required to relinquish the right to Brenner's continued compliance with the release, nondisclosure, no-contact, and non-disparagement provisions in Paragraphs 2, 4, 5, and 6. Thus, Brenner's failure to comply with Paragraph 4 is a breach of a contract promise, rather than a failure of a condition precedent. That is, Paragraph 4 provided for an order of performance of contract promises—Brenner first certifies compliance with Paragraph 4, and then gets paid.

-13-

Paragraph 6 provides that Greenberg and Weber will not make "any disparaging remarks" about Brenner and, significant here, "shall not discuss or disclose **any information whatsoever to anyone** concerning [Brenner's] business activities" (bold in original). In his telephone call with Aguirre, Weber discussed and disclosed information concerning Brenner's business activities—Weber said that "the project [on which Brenner had worked] was not where it should have been, that we should have been doing the three pads first, that Brenner had been buttering his own bread[,] and that [Weber] and Greenberg felt misled [by Brenner]." Doc. 116 at 15, ¶ 10. It would be impossible to say, as a matter of law, that Weber's statement did not breach Paragraph 6.

It likewise would be impossible to say, as a matter of law, that any breach of Paragraph 6 was not material. The materiality inquiry asks whether the breached provision "is of such a nature and of such importance that the contract would not have been made without it." *Arrow Master*, 12 F.3d at 715. The fact that the parties bolded the phrase "any information whatsoever to anyone" strongly suggests that the provision was crucial to Brenner. This is particularly so given Brenner's dim financial situation after parting ways with Greenberg and Weber and his need to find new work, which made it especially important that he avoid any criticism from his then-most recent colleagues regarding his then-most recent business venture. *See* Restatement (Second) of Contracts § 241(a) & cmt. b; *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 998 (7th Cir. 2001) (finding non-disparagement clause material in light of importance of term to party). On the evidence of record, a reasonable factfinder certainly could conclude that the breach of Paragraph 6, if one occurred, was material.

Accordingly, because Greenberg and Weber have not demonstrated as a matter of law that they did not materially breach the Agreement, they are not entitled to summary judgment on their counterclaim.

**Conclusion**

Greenberg's and Weber's joint motion for summary judgment on Brenner's claims is granted, and Brenner's claims are dismissed with prejudice. Given this disposition, there is no need to address Greenberg's separate motion for summary judgment on Brenner's claims, which is denied as moot. Greenberg's and Weber's joint motion for summary judgment on their counterclaim is denied.

November 15, 2010

_____
United States District Judge