UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN C. BRENNER, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 08 C 826 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| STEVEN GREENBERG and GARY WEBER, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

On November 15, 2010, the court granted summary judgment to Defendants/Counter-Plaintiffs Steven Greenberg and Gary Weber on Plaintiff/Counter-Defendant Steven Brenner's claims for defamation and breach of contract, and denied Greenberg and Weber's motion for summary judgment on their counterclaim for breach of contract. 2010 WL 4719694 (N.D. Ill. Nov. 15, 2010). Familiarity with that order, which sets forth the pertinent facts and legal issues, is assumed. On December 13, 2010, the court issued an order asking Greenberg and Weber to show cause why summary judgment should not be entered against them on their counterclaim. *See* Doc. 149. The parties have filed submissions on the order to show cause. In addition, Brenner has moved under Rule 59(e) for reconsideration of summary judgment on his defamation claim, and the court entertained argument on the motion on December 16, 2010.

The order to show cause inquired whether it is undisputed that Weber breached Paragraph 6 of the Settlement Agreement by disclosing to Manual Aguirre information concerning Brenner's business activities; whether it is beyond dispute that the breach, if it occurred, was material; and whether, under the material breach doctrine, Weber's breach would

foreclose Greenberg and Weber from pursuing their counterclaim. Greenberg and Weber contend that even if Weber's statement violated Paragraph 6, the material breach doctrine does not bar their counterclaim because Brenner indisputably committed the first material breach by violating Paragraph 4. Brenner did commit a material breach of Paragraph 4, *see* 2010 WL 4719694, at *5-7, and Greenberg and Weber are correct that, as a general matter, a contractual party's material breach excuses the other side's performance. *See Mohanty v. St. John Hearts Clinic, S.C.*, 866 N.E.2d 85, 95 (Ill. 2006); *Israel v. Nat'l Canada Corp.*, 658 N.E.2d 1184, 1190 (Ill. App. 1995). But this general principle is subject to exceptions, two of which apply here.

The first exception is what some call the "partial breach" doctrine and what the Seventh Circuit considers part of the "election of remedies" doctrine. *Emerald Invs. L.P. v. Allmerica Fin. Life Ins. & Annuity Co.*, 516 F.3d 612, 618 (7th Cir. 2008). The doctrine provides that when one party commits a material breach, "the other party can abandon the contract (unless the breach is very minor) and sue for damages, or it can continue with the contract and sue for damages. But if it makes the latter election, it is bound to the obligations that the contract imposes on it." *Ibid.* (citations omitted); *see also Omni Partners v. Down*, 614 N.E.2d 1342, 1346 (Ill. App. 1993); *S. Beloit Elec. Co. v. Lar Gar Enters., Inc.*, 224 N.E.2d 306, 310-11 (Ill. App. 1967) ("Where a contract is breached in the course of its performance, the injured party has a choice presented to him of continuing the contract or refusing to go on. If he chooses to continue performance, he has doubtless lost his right to stop performance.") (citations omitted). As the Williston treatise explains, "the general rule that one party's uncured, material failure of performance will suspend or discharge the other party's duty to perform does not apply where the latter party, with knowledge of the facts, … insists that the defaulting party continue to render future performance." 14 Richard A. Lord, *Williston on Contracts* § 43:15 (4th ed. 2010).

Although Greenberg and Weber were for some time unaware of Brenner's breach of Paragraph 4, once they learned of the breach they continued to treat the contract as binding and to insist upon Brenner's continued performance. Their counterclaim alleges not only that Brenner breached Paragraph 4, but also that Brenner's initial complaint in this case breached the covenant-not-to-sue in Paragraph 2. The claim that Brenner breached Paragraph 2 manifests Greenberg's and Weber's view that Brenner, following his breach of Paragraph 4, remained obligated to continue to render future performance. It therefore is beyond dispute that Greenberg and Weber did not abandon the contract upon learning of Brenner's breach of Paragraph 4, but rather continued to treat the contract as binding, which means they themselves remained bound to comply with Paragraph 6. *See George F. Mueller & Sons, Inc. v. N. Ill. Gas Co.*, 336 N.E.2d 185, 189 (Ill. App. 1975) ("The party who insists upon performance by the other party must show performance on his part, while he who desires to rescind the contract need only show nonperformance or inability to perform by the other.") (internal quotation marks omitted).

The second exception holds that Party A's material breach is not excused by Party B's prior material breach if Party A's breach would have occurred even absent Party B's breach. The exception is rooted in the sensible notion that if Party A would have materially breached regardless of whether Party B committed a prior material breach, Party A is not shielded from the material breach doctrine due to the fortuity of Party B's having breached first:

> It is generally not a defense to a breach of contract action that, following the breach, the other party suspended performance, provided that the performance would have been rendered had it not been for the breach. This rule, however, is rooted in the notion that the other party would have performed had no breach occurred. Thus, if, following the breach, it becomes apparent that the other party's failure to perform would have occurred regardless of the breach—that is, that the breaching party would not have received what he or she bargained for had there been no breach—the other party ought not to be allowed to recover damages for the

> breach. … [T]he breach of contract does not cause compensable harm to its victim, since he or she would not have performed the contract in any event and the breaching party would not have received the expected consideration, regardless of his or her breach.

15 Lord, *supra*, § 43:32. Here, it is beyond dispute that Weber would have breached Paragraph 6 regardless of whether Brenner previously had breached Paragraph 4—for at the time of Weber's breach, he did not know of Brenner's breach. Thus, if Weber's breach was material, the material breach doctrine bars the counterclaim. *See Dawdy v. Sample*, 532 N.E.2d 1128, 1134 (Ill. App. 1989); *George F. Mueller & Sons*, 336 N.E.2d at 189; *Ross v. Danter Assocs., Inc.*, 242 N.E.2d 330, 333 (Ill. App. 1968) ("we agree with the general proposition that where two parties to a contract are in default neither can recover").

Greenberg contends that Weber's breach of Paragraph 6 cannot be imputed to him and therefore does not bar him from pursuing the counterclaim. The contention is incorrect. Paragraph 6 provides: "Respondents [Greenberg and Weber] agree that none of them will make any disparaging remarks … and the Respondents shall not discuss or disclose **any information whatsoever to anyone** concerning [Brenner's] business activities." Doc. 97-1 at 9. This provision imposes a joint and several obligation on Greenberg and Weber to avoid disclosing or discussing information about Brenner's business activities. *See* 735 ILCS 5/2-410 ("All parties to a joint obligation … may be sued jointly, or separate actions may be brought against one or more of them."); *Intervisual Comm'ns, Inc. v. Volkert*, 975 F. Supp. 1092, 1107 (N.D. Ill. 1997) ("Under Illinois law, all joint contractual obligations are joint and several obligations."); Restatement (Second) of Contracts § 289. Thus, just as Brenner could have recovered (had he not materially breached) from both Weber and Greenberg for Weber's breach, any limitation imposed by the material breach doctrine on Weber's right to sue Brenner extends to Greenberg

as well. *See Ghahremani v. Uptown Partners, L.L.C.*, 2005 WL 3211463, at *6 (D.D.C. Nov. 13, 2005) (one co-party's failure to perform precludes both co-parties from pursuing contract claim for counter-party's breach). The contrary result would make little sense. Suppose ten individuals were obligated on one side of a contract, and nine committed a material breach. The other side surely would not have received the benefit of the bargain, and it would be unjust to saddle him with an obligation of continued performance, on pain of money damages, just because one of ten counter-parties managed to perform.

Finally, Greenberg and Weber contend that a reasonable jury could conclude that Weber's breach of Paragraph 6 was not material. Greenberg and Weber do not and could not seriously contest that a breach occurred. It is undisputed that Weber told Aguirre that "the project was not where it should have been, that we should have been doing the three pads first, that Brenner had been buttering his own bread[,] and that [Weber] and Greenberg felt misled." 2010 WL 4719694, at *7. This statement plainly violated the prohibition in Paragraph 6 against "discuss[ing] or disclos[ing] **any information whatsoever to anyone** concerning [Brenner's] business activities." *Ibid*. No reasonable jury could find otherwise.

Whether the breach was material turns on "whether 'the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it.'" *Arrow Master, Inc. v. Unique Forming Ltd.*, 12 F.3d 709, 715 (7th Cir. 1993) (quoting *Haisma v. Edgar*, 578 N.E.2d 163, 168 (Ill. App. 1991)). Materiality generally is for the jury, *see Israel*, 658 N.E.2d at 1191, and a reasonable jury could find that the $331,200 check and $32,300 in debt relief that Brenner received from Greenberg and Weber—and not the non-disclosure provision in Paragraph 6—was the key reason he entered into the Settlement Agreement and released whatever prior claims he had against Greenberg and

Weber. As noted in the court's prior order, a jury certainly could conclude otherwise, particularly given the parties' decision to bold the phrase "any information whatsoever to anyone" in Paragraph 6. *See* 2010 WL 4719694 at *8. But the materiality question is for the jury, which means that the court cannot hold as a matter of law that Greenberg's and Weber's counterclaim is barred by Weber's breach of Paragraph 6.

This holding is consistent with the court's prior ruling that Brenner's breach of Paragraph 4 *was* material as a matter of law. *See id.* at *7. The reason is that the Settlement Agreement makes crystal clear that any breach by Brenner of Paragraph 4 would be material. Brenner expressly "acknowledge[d]" in Paragraph 4 "that one of [Greenberg's and Weber's] primary reasons for entering into this Agreement [was] to obtain complete confidentiality regarding their businesses and business affairs." *Ibid*. Paragraph 4 also made Weber's and Greenberg's payment to Brenner contingent on Brenner's compliance therewith. *See ibid*. And if the point were not already clear enough, Paragraph 15 stated that "[Brenner's] promises under paragraph[] 4 … are a substantial and significant reason for the Settlement Payments to be made hereunder to [Brenner] by [Weber and Greenberg], and [Weber and Greenberg] are relying on absolute and strict observation by [Brenner] of the aforesaid promises." Given these unambiguous provisions, which have no counterpart in the portion of Paragraph 6 obligating Weber and Greenberg, no reasonable jury could conclude that Weber and Greenberg would have entered into the Settlement Agreement absent Brenner's commitment to Paragraph 4.

In his motion for reconsideration, Brenner urges the court to revisit its grant of summary judgment to Greenberg and Weber on Brenner's defamation claim. The court granted summary judgment due to Brenner's failure to demonstrate a material issue of fact over whether Weber's statement to Aguirre was false. Specifically, the court held that Brenner's rendition of Weber's

-6-

statement had no record support, *see id*. at *3, and that Brenner supported his charge that Weber's actual statement was false only with Brenner's complaint (which is not evidence) and with irrelevant passages from Aguirre's deposition, *see id*. at *4. *See generally* Doc. 116 at 3 (¶ 5) (portion of Brenner's Local Rule 56.1 response submitting that Weber's statement was "slanderous"); Doc. 127 at 5-6 (¶¶ 17, 20-21) (referencing the portions of Brenner's Local Rule 56.1 statement of additional facts submitting that Weber's statement was "defamatory," "slanderous," and "false").

Brenner first contends that the court's ruling was error because he *did* cite evidence supporting the falsity of Weber's statement. But the evidence Brenner highlights in his reconsideration motion was cited in his Local Rule 56.1 materials *not* for the proposition that Weber's statement was false, but for the propositions that (a) Aguirre declined to sign a written statement "which denied that Weber had disparaged [Brenner]" and (b) Aguirre was "quite impressed" with Brenner's work on the "Steve's gas project." Doc. 116 at 19 (¶¶ 2-3), 21 (¶¶ 23-24) (cited in Doc. 146 at 3-4, 6). Neither proposition, on its face, asserted that Weber's statement was *false*. Aguirre refused to sign a statement denying that Weber "disparaged" Brenner, but a disparaging remark can be and often is true. *See Patlovich v. Rudd*, 949 F. Supp. 585, 595 (N.D. Ill. 1996) (distinguishing "disparaging" statements from "defamatory" statements, and noting that the "ordinary, non-technical meaning" of "disparage" is "'to speak of in a belittling way; to reduce in rank or esteem'") (quoting *Webster's New Riverside University Dictionary* 387 (1984)); Bryan A. Garner, *A Dictionary of Modern Legal Usage* 284 (2d ed. 1995) (defining "disparaging" as "slighting, insulting"); http://dictionary.reference.com/browse/ disparage (defining "disparage" as "to speak of or treat slightingly; depreciate; belittle" and "to bring reproach or discredit upon; lower the estimation of"). And the fact that Aguirre was

impressed with Brenner's work on Steve's Gas confirms rather than undermines Weber's statement that Brenner was "buttering his own bread," as Weber's point was that Brenner was paying undue attention to Steve's Gas (in which he had an ownership interest) and insufficient attention to the other three pads in the Gold Canyon project. *See* 2010 WL 4719694, at *2, 4. Thus, neither proposition in Brenner's Local Rule 56.1 materials reasonably would have prompted to court to examine the cited evidence to determine whether that evidence supported the falsity element of Brenner's defamation claim.

Accordingly, when its surface is scratched, Brenner's contention rests on the premise that the court should have scoured the *entire* record for evidence of falsity, including portions of the record that Brenner did not cite for the proposition that Weber's statement was false. That premise is incorrect. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) ("The district court cannot be expected to search through the entire record for evidence that may support a party's contentions; a party must point to specific evidence that creates a genuine issue of material fact for trial."); *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."). The court did not err in declining to search the record on its own, and Rule 59(e) "does not provide a vehicle for [Brenner] to undo [his] own procedural failures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).*

---

* Given this disposition of Brenner's first contention, there is no need to address whether the record materials referenced by Brenner's reconsideration motion (*see* Doc. 144 at 4-10) actually support the falsity element of his defamation claim.

Brenner's second contention is that amendments to Federal Rule of Civil Procedure 56, which took effect on December 1, 2010, effected an intervening change in controlling law that warrants reconsideration. Amended Rule 56(c)(3) provides that "[t]he court need consider only the cited materials, but it may consider other materials in the record," while amended Rule 56(e)(1) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may give an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(c)(3), 56(e)(1). The new provisions, Brenner argues, "bespeak a newfound assumption that litigants be accorded a second opportunity to properly support material allegations." Doc. 146 at 12.

Brenner's appeal to the Rule 56 amendments fails. As an initial matter, amended Rule 56(e)(1) does not *obligate* the court to give Brenner a second bite at the apple, and amended Rule 56(c)(3) does not *obligate* the court to search non-cited portions of the record—meaning portions of the record not cited to establish falsity—for evidence of falsity. Both provisions use the term "may," affording the court the opportunity, but not the obligation, to give a party a second chance or to do a party's work for it. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346 (2005) ("The word "may" customarily connotes discretion.").

Courts actually had the same discretion prior to December 1, 2010—discretion, it bears mention, that the court exercised in this case. The arguments Brenner advanced in opposition to summary judgment on Greenberg's and Weber's counterclaim were meritless. *Compare* Doc. 118 at 4-5 (Brenner's attempt to justify his breach of Paragraph 4) *with* 2010 WL 4719694, at *5-6 (rejecting those arguments). Yet the court still denied summary judgment, having exercised its discretion to invoke *sua sponte* a defense (the material breach doctrine) that Brenner himself did not advance. *See* 2010 WL 4719694, at *7-8. It is unclear why Brenner did not invoke the

-9-

doctrine in opposing summary judgment on Greenberg's and Weber's counterclaim, as Greenberg and Weber invoked that very doctrine in seeking summary judgment against Brenner on *his* contract claim. *See* Doc. 106 at 11. The court's unsolicited work on Brenner's behalf saved him from certain judgment on the counterclaim—which would have cost him over $195,000, the liquidated damages set forth in Paragraph 7 for breach of Paragraph 4.

Even if the amended Rule 56 could be read to impose obligations rather than opportunities, it would not apply in the context of Brenner's Rule 59(e) motion. The Chief Justice's transmittal order states that the amendments should be applied to pending cases "insofar as just and practicable." Order Amending Federal Rules of Civil Procedure (U.S. Apr. 28, 2010). The Seventh Circuit held that identical language accompanying the 1991 amendments did not imply an intent "to change the *consequences* of actions completed before" the amendment. *Diaz v. Shallbetter*, 984 F.2d 850, 853 (7th Cir. 1993). Thus, applying amended Rule 56 here (assuming it imposes obligations) would work an unwarranted and unjustified retroactive effect by relieving Brenner of the consequences of his failure to properly adduce evidence of falsity in his summary judgment papers. *See* 28 U.S.C. § 2074 ("The Supreme Court may fix the extent such [amended] rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings … would work injustice, in which event the former rule applies."). Indeed, taking a broader view, applying amended Rule 56 in the context of a Rule 59(e) motion would place a cloud over countless summary judgment orders issued in the twenty-eight days preceding December 1, 2010, by giving losing parties a second chance to adduce evidence not presented in the summary

judgment briefing.  Such an outcome would hardly be "just and practicable," particularly in this case.  *See* Commentary on 1998 Revision to 28 U.S.C. § 2074 (statute "recognizes the endless variations met from one case to another and gives the judge closest to the scene the final say in determining whether it is fair to give retroactive effect to a new rule").

To summarize, Brenner's motion for reconsideration is denied, the order to show cause is discharged, and this case will proceed to trial on Weber's and Greenberg's counterclaim.

March 10, 2011

_____
United States District Judge